with the court's permission I would like to reserve three minutes for rebuttal may please the court my name is Karl Frankovich and I'm here today representing the appellants William and Frosty Eastham. Mr. and Mrs. Eastham respectfully ask this court to reverse the district court's decision for three reasons. First the lease provision at issue known as paragraph 19 can reasonably be read in more than one way and is therefore ambiguous. Second even if this court finds paragraph 19 to be unambiguous in favor of Chesapeake that Chesapeake failed to comply with the explicit terms of the agreement. And lastly paragraph 19 as Chesapeake seeks to apply it creates an unconscionable result. Your honors this case is about the intent of the parties to an oil and gas lease that was entered into between the appellants and Chesapeake's predecessor in interest in 2007. Paragraph 2 of this lease which is known as the term clause said that this lease is for a period of five years unless operations are commenced within that five-year period and oil and gas is being produced. It is undisputed that operations were not conducted within that five-year period. However 26 days prior to the expiration of the lease Chesapeake sent a check in the mail to the Eastham's for less than $500 with a letter saying that it had exercised its extension under the same terms as the original lease. Paragraph 19 provides upon expiration of this lease and within 60 days there and after less or grant Celeste an option to extend or renew under similar terms a like lease. Now since this appeal has been filed four courts have interpreted paragraph 19 and all four have reached a different conclusion as to its meaning. This sentence is unclear indefinite and reasonably subject to dual interpretations and is therefore ambiguous as a matter of Ohio law. The Eastham's interpret paragraph 19 to provide Chesapeake an option to enter into a like lease under similar terms. The case of Flannery Viendervest which was the court of common pleas of Carroll County said that this court finds no meaningful distinction between an option to extend and an option to renew. In either event the developer obtained an option to acquire a like lease. It went on to say that this lease language that the original developer chose did not provide it with an unrestricted right to extend the lease particularly when it did not specify the duration of any permissible extension. Also the circuit court of Brooke County West Virginia in the case of Wood v. Chesapeake stated that the words extend or renew can reasonably be read together to have a similar meaning. As a result it would be reasonable to conclude that under similar terms a like lease applies to both extend and renew and therefore paragraph 19 is ambiguous. Now Chesapeake interprets paragraph 19 to provide two separate options. The first option is to extend which in of itself Chesapeake claims grants it the right to extend the lease for five years under the same payment of $490. The second option is to renew under similar terms a like lease. Both Chesapeake and the district court agree that under similar terms a like lease allows some negotiation some terms of the lease are subject to change or can change. The issue is whether under similar terms applies to both extend and renew and whether what may be extended is a like lease. Now the standard rules of grammar dictate that if you read the sentence just the plain language it says an option to extend a like lease. It is the direct object of that sentence. You extend a like lease or you can renew a like lease. There's only one direct object. The district court had to insert an existing lease after the word extend and the court cannot insert words into a sentence that do not exist especially when they contradict what the sentence states. Also Judge Guy if there had been no option to renew clause here if this was just a five year lease at the end or near the end of the lease the company could have gone to the landowner and said we'd like to negotiate another five years for example. If that being the case unless the option clause confers some right of unilateral action what purpose does it have? It does have a purpose in that if you read it in paragraph 19 as a whole the first sentence of paragraph 19 prevents the lessor from entering into a top lease. It says the lessor may not enter into any other lease during the five year primary term of the lease. The second sentence then says you grant us a 60 day period after the expiration of this lease to enter into a like lease under similar terms. It prevents the lessor from entering into a new lease right at the end of the term. It provides the lessee an option to enter into a like lease to renegotiate during that 60 day period. The other rule of grammar that must be applied to this sentence is known as the series qualifier canon and that dictates that the term under the phrase under similar terms a like lease applies back to both extend and to renew. And that's just a rule of grammar that has been adopted by the Sixth Circuit in the case of United States v. Evers and that rule says that when several words are followed by a clause which is applicable as much to the first and the other words as to the last, the natural construction of the language demands that the clause be read as applicable to all. Now if Chesapeake wished to limit the backward reach of under similar terms, it could have done so in several ways. In a clearer way, it could have inserted the word to before the word renew. So it would have said to extend or to renew under similar terms. Applying the series qualifier canon, that would have limited the backward reach. Chesapeake could have been even clearer and said lessor grant lessee an option to either, number one, extend under the same terms for the same consideration for a period of five years or number two, renew under similar terms a like lease. It was in their power as the drafter of the lease to make the sentence clear and precise and it didn't do that. Further, the Ohio State Supreme Court has also held that a phrase containing words of similar import separated by the term or is susceptible to two different but reasonable interpretations. Just to quote that case because I think it's of importance, it says, is the phrase chest or compartment ambiguously used? We are the opinion that it is. It is susceptible to but different but sensible and reasonable constructions. The term chest and compartment may be interpreted as having an identical meaning but also as having an alternative meaning. The ambiguity arises from the careless use of the word or which may sometimes be used to connect words of having the same meaning as for example, that figure is a sphere or a globe or a ball. And it may sometimes be used to connect words as having a different meaning. The word or may be used in the sense of that is and it may be used in the sense of either or. That's the language of the Ohio Supreme Court. Applying that case, the same situation, extend or renew. Extend, that is renew under similar terms a like lease. There are not two separate options in this case. And even if there were two separate options and the court has to give the definitions extend and renew different meaning, the options were to extend under similar terms a like lease or to renew under similar terms a like lease. And each one of those would have a distinct meaning. An extension would be a one page document which sets forth what terms are subject to change. While a renewal would require the execution of a new lease. Chesapeake itself has drafted an extension of a paragraph 19 lease and entered into an extension of a paragraph 19 lease for a term of one year for an increased bonus payment and for an increased royalty interest. So Chesapeake cannot maintain the position that an extension has to be for five years under the same terms because it self-drafted an extension which changed the terms. They entered into an extension under similar terms of a paragraph 19 lease. The next reason, even if the court adopts Chesapeake's interpretation, Chesapeake did not comply with the language in paragraph 19. It is unambiguously states upon expiration of this lease and within 60 days there and after, less or grant Celestine an option. The option is not granted until the lease expires. The primary term of the lease was to expire on April 9, 2012. Chesapeake filed its notice of extension on March 14, 2012. 26 days prior to even having an option which could be exercised. The case of Flannery-Vienna Vest which is the Carroll County case said in that case the lessee extended, purported to extend the lease four months before the lease permitted the developer to exercise its option for extension or renewal. Also the case of Bassett v. Chesapeake which is a northern district of West Virginia case which was just decided a few days ago, interpreted that phrase to create a condition precedent and said that Chesapeake's extension prior to the expiration of this lease was untimely. The most recent pronouncement from a court though finds that the condition was non-material and so even though they say it was a condition precedent they don't find that it's outcome determinative. I believe the case said that they wouldn't require Chesapeake to wait until the expiration of this lease because of the doctrine of impracticality which under that doctrine it would basically say that it was impossible for Chesapeake to wait until the lease expired. But I don't believe there are any facts in the record where Chesapeake could not have waited an extra 26 days to extend this lease. It is clear it is Chesapeake's language. They said upon expiration they should be bound by it. The district court said there's no logical reason to force Chesapeake to wait until the lease were to expire. The logical reason is that's because that's what the sentence states. It is Chesapeake's language. And to apply half of the sentence strictly and to ignore the other half, it's against Ohio law. The court also said that the district court recognized that paragraph 19 can be read just as easily one way as it can another. And that is by definition an ambiguous sentence. And once it came to that conclusion it should have found paragraph 19 ambiguous. The third reason that this, even if the court adopts Chesapeake's interpretation, paragraph 19 as Chesapeake seeks to apply it creates an unconscionable result. Now to show procedural unconscionability the Eastman's had to show that there was an absence of meaningful choice. And the factors to be considered are age, education, intelligence, business acumen, relative bargaining power, who drafted the contract, and whether the terms were explained. Every single one of these factors show procedural unconscionability. Mr. Eastman was a retired 61 year old steel worker who dropped out of high school as a freshman after failing for two years. He's illiterate. He had never entered into an oil and gas lease before. It was a billion dollar oil and gas company negotiating with a retired steel worker. The lessee drafted the contract and the terms were explained to him by the lessee's leasing agent. And he said this is a five year lease that can be renegotiated after that five year period. It was their agent who told him that. Clearly there is procedural unconscionability in this case. Further, the substantive unconscionability is that it was when there is a commercially unreasonable lease provision. In this case, there's clearly a commercially unreasonable lease provision because Chesapeake can never get the bad deal. Your time is up. Are there no questions? Chesapeake, I didn't hear what you said. Chesapeake can never get the bad deal. The way they interpret paragraph 19 is if the market rate goes up as it did, in 2012 they would choose their option to extend and get the market rates from 2007. But if the market rates had gone the other way and they had gone down, in 2012 they would have exercised their option to renew under similar terms. Just assuming that they did have a valid contract to extend, that's always the case, isn't it? No, the person who gets the option to extend has the better deal. I mean, that's what they bargained for, right? That is right. They are granting an option to extend. I don't see it's unconscionable substantively to negotiate for an extension of a lease. I mean, that happens all the time. That's correct, Your Honor. But what they negotiated, the way they interpret paragraph 19, is that... No, just assuming that that is the correct interpretation, you say that itself is unconscionable? Because they can never lose? They can never, that's correct, because... That's always the case if you have an option to extend a lease, is it? Because if it's not going to be a good deal, they're not going to extend it. I mean, what you're paying for, right? What they could have done under their interpretation is they could have said, we have an option to now renew under similar terms. So we're going to take similar terms and we're going to say it's now the market condition and we're going to pay you $1 per acre. So they're saying they had that option to choose to extend... Just so I understand, are you saying it's unconscionable as a matter of law ever to have a clause in a lease that it can be extended at the leaseholder's discretion? No, I'm saying it would be unconscionable as a matter of law to provide a commercially unreasonable lease provision which would allow Chesapeake to have that... Mr. Martin. I may have pleased the court, James Martin, Your Honor, for Chesapeake. Taking these points in order on the construction of the contract point, there's ample support for the district court's construction of this contract giving it a plain meaning under Ohio law for at least four reasons. The court applied common usage to the terms in paragraph 19 and gave the words extend, renew, and or their ordinary dictionary meanings which provided Chesapeake then with alternative options, one to extend or one to renew a similar lease on like terms. That is the primary rule of construction that Ohio courts follow. From the Supreme Court forward in the Alexander case, common usage is the first place to go in construing a contract. It is the primary rule that if it answers the question, then we have answered the question. But if you move beyond that, Ohio law also provides that every word in a contract should be given independent meaning where that can happen in context and second, that words should not be surplusage in contracts. It's just the flip side of that point. Looking at that principle of construction, it also substantiates exactly what the district court did. Apart from that canon or principle of construction, we also look at this phrase in context. There are two parts to paragraph 19, two independent parts. Both of them show there's a distinction and an independence between extend and renew. The anti-top leasing provision which is the first part of 19 clearly makes a distinction between extension and renew on its terms and says that the anti-top leasing provision will be applied to the primary term of the lease and whether the lease is extended or it's renewed. The district court simply carried that consistency through in its construction. Lastly, we have the judicial construction of lease provisions with extension or renewal under Ohio law. We've cited the City of Xenia case. We've cited the Gray-Brooks case. We've cited the Ferguson case which is the Ohio Supreme Court decision in 1960, all of which establish that in a lease option, extend means to continue what was originally there. Renew means to enter a new agreement. That distinction is preserved from that Ferguson case in 1960 to the present and as we've said in our brief, the Corvington case doesn't change that because Corvington only had the word renew in its lease and clearly reached a decision on its facts that is inconsistent with what the district court said here. On this whole notion of the series qualifier canon and this court's opinion in Evers, first of all, the series qualifier canon doesn't trump common usage. Rules of grammar don't displace principles of contract instruction and so the resort to the qualifier can't change what the plain meaning is in this contract. But an attempt to apply the series qualifier canon here as Evers stated it doesn't work because Evers plainly said that for the series qualifier canon to work, it had to apply to each item in the list equally. The word extend doesn't need any qualification in a lease option under Ohio law or in this contract in particular and so there is no point in reading the qualifier to extend and in fact you can't attach it to extend without making the lease redundant. It makes perfect sense to attach it to renew because renew means you get a new agreement and so the qualifier quite rightly is attached to renew because it limits the circumstances under which the contract can be renewed. Also, Judge Guy, let me interrupt. It isn't totally clear to me. Supposing that they had said here we exercise our option to renew the lease. Now what do you contend would be the next step? The next step would be that Chesapeake would present the plaintiffs with a new agreement on similar terms and after that presumably the parties would either have discussions about whether they were going to enter that agreement or whether Chesapeake would say it's the exercise of an option right and we want it to be enforced but that's the difference. Here they simply notified the other side of the extension of the lease which didn't require a new agreement or further discussions at all consistent with both the provision and with Ohio law. Well, if that's what renew means then that gets back to my question that I asked other counsel that if renew just gives you the right to talk about negotiating a new lease you haven't gotten much because you have that right anyway. Correct, Your Honor, and I wasn't suggesting that the word renew just simply confers a right to renegotiate. I said, and by the way I agree, Your Honor, if that's all it was we'd not only be redrafting paragraph 19 but it wouldn't have any independent meaning which would be contrary to Ohio law. But what I said was Chesapeake would present the plaintiffs with a new agreement on similar terms. I said presumably there would be some discussions about that but depending on how those discussions worked out Chesapeake would have the right under the option to say this is the agreement and exercise the option with a new agreement on similar terms. So it is a meaningful adjunct to extend in a different right than extend but in this particular instance not relevant because the extend option is not in debate and that is the one that they exercised. Looking at the condition precedent issue quickly, the clause in question upon expiration and the district court dealt with this very particularly but it doesn't deal with the notice of the exercise of the option at all. What it deals with is the length of the option period and so the plain language of that provision really doesn't say that Chesapeake's exercise of this option somehow breached the contract. If you move beyond that it makes practical sense to provide notice of exercise before the window period is open when the option actually can be exercised and there is nothing inconsistent with that in the provision. And lastly, the Bessette case did find that a premature exercise even if that was a condition precedent isn't material because the lessor gets notice, the option is timely exercised and you end up in the same place. Quite a different situation than if you were too late. The plaintiffs haven't cited a case and there isn't one that we're aware of that says that premature, if that's what it is, notice would somehow be material and cause a breach. Lastly, on unconscionability, there is no evidence in this record that would support a finding under Ohio law of procedural unconscionability which can end the inquiry right there or commercial unreasonability substantive. There's been a lot of argument about it but the only affirmative evidence in the record negates procedural unconscionability. There was no pressure, there was no compulsion, there was no age issue that crept in here. The reason the plaintiffs ended up with this agreement was... How about the allegation that there was a misrepresentation that after the expiration of the lease you could renegotiate it? As to the procedural factors in unconscionability, that doesn't change the analysis. It still comes back to what was said in the lease and the circumstances of the negotiation of the agreement. This isn't a misrepresentation or reformation claim. It's about the procedural circumstances of the discussions and... Okay, I mean if there's a misrepresentation when it's signed that doesn't go to the procedural unconscionability? If there's no compulsion, coercion, where you are... Or misrepresentation? I mean it doesn't seem like misrepresentation is much different than coercion. Let me come at it this way, Your Honor. When the lease discussions from a procedural standpoint on unconscionability were undertaken, Mr. McGraw's comment, the supposed misrepresentation, didn't refer to any particular provision in the lease, didn't refer to Paragraph 19 in particular. The plaintiffs never read the lease, never read Paragraph 19, never asked anyone to read Paragraph 19 to them, and there's no part of this discussion that says with respect to Paragraph 19 any misrepresentation was made at all. What would solve the problem here is if the plaintiffs had said that's fine, we understand your view of this lease, Mr. McGraw, but we want to review it. Or where is that in the lease? Read that provision to us. And of course had he done that or been asked to do that, the plaintiffs understood that Paragraph 19 didn't say what he said. So on the document itself they would have figured that out. And lastly, in these circumstances what Ohio law says is you can't take advantage of the fact that you didn't read the agreement or didn't ask somebody to read it to you or for you, and that's where the coercion or compulsion comes in. Had they done that and taken that step, somebody would have said it's not in there and they could have come back and said no. Procedural unconscionability says you never have that opportunity because of the pressure and coercion at the time of the discussions. So it doesn't meet the definition. On the commercial side, there is no evidence that at the time this agreement was entered into, it was commercially unreasonable. There's not a lick of testimony in this record about that. So even if we move there, what we have is a situation in 2007  this lease was entered into. It had a delay rental in it that the plaintiff said was a good deal at the time and otherwise didn't have a problem with it. The problem arose later when market conditions changed. But that isn't when commercial unreasonableness is judged. It's judged at the time of entry. And there is no testimony in the record that at the time of entry this provision was commercially unreasonable, which disposes of the unconscionability analysis. Counsel, I have one more question. It sort of harks back to what I asked you before. When you exercise under this language the option to extend, what's the term of the extension? The term of the extension, Your Honor, is for another five-year period for the primary term of the lease. And, of course, if drilling commenced, then the secondary term would kick in and the lease could go on longer. But if there is no drilling in that next five-year period, it's only one option. It ends by its terms. The Brown case in West Virginia said that would be the controlling law in this instance. That is Chesapeake's construction of this agreement and there's no dispute about that. Suppose then that they had sent a letter that said, we exercise our option to extend this lease for a term of two years. I'm not sure that that would have been compliant, consistent with the definition of extend. So there might have been a debate about whether that was a proper extension. But I think that the relevance of that here is incomplete or maybe it's not significant because if they had extended for five years, stopped drilling and abandoned and not done anything in two, and then gone to the plaintiffs and said, we're done, presumably the plaintiffs would have been happy. They could have gone back in the market and made another deal. Well, it almost sounds to me, though, just applying common parlance that if you have a five-year lease and you're going to do the same lease for another five years, that what you're doing is renewing it. That seems to be the term I would use. Well, but that's why the hypothetical of the two years is not entirely relevant, Your Honor, because extension means continue the lease on its original terms. That is the option that Chesapeake elected. That is for one more five-year period. And so I don't know, as I said, if they had said two years, whether that would have been compliant. So it might have been an ineffective exercise. But it's not relevant because they exercise this option as it was granted to them, precisely according to its terms, which they had the contractual right to do. Well, how do you get that definition of extend that it means the exact same term? If I'm staying in a hotel and I've stayed there a week and I go down to the desk and say, I'd like to extend my stay, I'm not committing myself to stay for another week. Yes, Your Honor. Well, I don't know that, but yes. In the lease option context and in the context of paragraph 19 in particular, extend has an operative meaning that is continuation of the lease on its original terms, which happens also to align with common usage and the principles of construction that I talked about earlier. But even if that didn't occur, the judicial construction of this provision under Ohio law would compel that that's what it is. Okay. Thank you. All right. If there are no further questions, we'll hear from Mr. Frankovich in rebuttal. Your Honors, I just want to touch on a few points. The first is that Chesapeake does not, cannot refute the interpretation advanced by the Eastman's that if there are two options, you can extend the definition and renew the definition that the District Court applied and the Chesapeake seeks to apply that an extension is a continuation of the lease, but that does not necessarily mean that it's under the exact same terms. I think Judge Guy recognizes that an extension can be under one term for one year, can be for two years, it could be for ten years. Paragraph 19 does not say how long that extension is going to be. Chesapeake also entered into extensions of Paragraph 19 leases for one year and for two years with increased royalty interest, with increased bonus payments. That is what was contemplated by Paragraph 19, that there could be an extension and those terms were going to be subject to change. Next is that Chesapeake tries to twist its early execution of its option to be just a notice of extension. Clearly if you read the notice of extension that Chesapeake filed, it says, whereas it is the desire of Chesapeake to provide public notice evidencing that the primary term of the lease has been effectively extended. This was not giving notice to the lessor that they were going to extend the lease upon expiration of the primary term. This was giving notice to the public that the lease has been effectively extended. Therefore, it was untimely. The other point I wanted to talk on was that Chesapeake maintained that there was no pressure to enter into this lease, so there cannot be procedural unconscionability. But pressure is just one factor. The circumstances have to be looked at as a whole. Chesapeake's agent explained the terms of this lease, whether he made specific reference to paragraph 19 or not. He said this is a five-year lease and you can renegotiate it at the end of that five-year term. That factor alone should be able to find procedural unconscionability. As for substantive unconscionability, Chesapeake had made the argument that if they tried to exercise their option to renew under similar terms, he said that they could go to the lessor and say this is the agreement. And he said we can move to enforce it. And that is where there is a substantive unconscionability. If they chose their option to extend, they get the market rates of 2007. But if they said here the market rate has gone down, here is a renewal under similar terms for $1 per acre, and we are going to move to enforce it. That is why they get the better of the two deals. That's why it is a commercially unreasonable lease provision. It says heads I win, tails you lose. No matter what, we're getting the lower of the prices. In conclusion, paragraph 19 is a poorly drafted lease provision. It is their language. It could have been clear. If they wanted two separate options, they should have drafted it to provide two separate options. They should have put it in paragraph 2, where it discussed the term clause, how long the lease was going to be. They shouldn't have buried it in the bottom of paragraph 19 if that was really their intent. It is a poorly drafted lease provision that has been interpreted four separate ways by four separate courts. It is clearly ambiguous under Ohio law. Thank you. We appreciate the argument you've both given and will consider the case carefully. There are no other cases to be argued, so you may adjourn court.